The first thing I'd like to do is apologize to the Court for my scratchy voice. There was no voice yesterday, so luckily the Court's only given me ten minutes, and I'd like to reserve two of those for rebuttal, and I will be brief. All right. May it please the Court, Brett Schuman, Morgan Lewis, and Bacchius, on behalf of the appellant, Teletech Holdings, Inc., and the other appellants. I would like to address the issue. There were several issues discussed in the brief. The only one I will address, unless there are questions, is the severance question. I think the distinguishing and most salient feature of this case is that the employment arbitration agreement signed indisputably by Mr. Martin includes an express severance clause. That express severance clause can and should be applied to the fee-sharing provision of the arbitration agreement, which at the time this arbitration agreement was made, in 1997, was valid pursuant to Code of Civil Procedure 1284.2. But two and a half years later, the California Supreme Court held it was unenforceable in Armendariz. The express severance clause in this case should be applied to excise that clause, leaving a perfectly valid arbitration agreement that would enable Mr. Martin and the other putative class members to vindicate the statutory rights that they are pursuing in this case. What is the standard we apply in determining whether or not it's severable or not? Well, I believe it's de novo. It's contract interpretation. There are no disputed facts. And it's a motion to compel arbitration, which is also de novo review. If I've understood your question correctly, Judge Tashima. Well, I guess I'm getting at something a little bit more. In other words, you know, what kind of factors should we consider in deciding that question? In other words, you know, some cases hold that it's severable. Some cases hold that it isn't. And, you know, what's the distinction between those two lines of cases? I think there's a clear distinction. This Court has obviously, and a couple of members of this panel are veterans of the Circuit City Wars, in none of those agreements was there an express severance clause. Al-Safin, which Judge Tashima and Judge Bea, you were on the panel, obviously. Ingle, Adams, Mantore, no express severance clause in the Circuit City dispute resolution procedures. In none of the cases we have considered, why don't you tell us what we should consider? What you should consider is the fact that, and I apologize, I was getting to that, in those cases and in all the cases cited in Mr. Martin's appellee's brief, the issue was application of 1670.5, which gives the Court the discretion to sever when, under certain circumstances, and you look to policies, for example, saving the contractual relationship and not giving one party an undue advantage or unduly punishing another party. In this case, where you have an express contractual severance clause that expresses the intent of the parties, that discretionary analysis that was applied in the Circuit City cases I mentioned and in the cases cited by Mr. Martin is inapplicable. Here it is a question of law, the intent of the parties on a written agreement as to which there is no extrinsic evidence. And another example is from the Morrison v. Circuit City's case, which is from your Circuit, Judge Siler, that was an embanked decision, again, dealing with Circuit City's DRP, although it was a later version of the Circuit City DRP, which included an express severance provision, and notwithstanding, and this case is cited in our briefs, and notwithstanding the fact that there were still several objectionable provisions of the Circuit City DRP, statute, shortened statute of limitations, limitations on remedies that the plaintiffs could obtain. You had to pay Circuit City $75 to arbitrate. All those objectionable provisions, because there was an express severance clause, the embanked decision in Morrison v. Circuit City severed the objectionable provisions and affirmed the order of compelling arbitration. So that, Judge Tshishima, is the distinguishing feature and the factors that are inapplicable here. So as I was saying, once you take out the — once you excise the fee-sharing provision, the plaintiffs here are fully capable of vindicating their statutory rights, and there's no argument otherwise in the brief. Under the Armendariz factors, the Cole factors, the factors that are routinely considered, there are no limitations on discovery in this arbitration agreement. The plaintiff has full Federal rule of civil procedure discovery. There are no limitations on the remedies the plaintiffs may obtain for their statutory claims. They get a neutral arbitrator. Kennedy. What about mutuality? Well, mutuality, Your Honor, is an issue that was not raised below and cannot be raised on appeal because of the factual issues that are wound up in that. If the plaintiff below had challenged the mutuality of this agreement, my clients would have had the opportunity under Armendariz and under 1670.5, which is the unconscionability statute, if he had argued that below, we, under the statute, my clients shall, shall be permitted to present evidence regarding the commercial setting, purpose and effect of the very limited carve-out provision in this arbitration agreement. There's a carve-out provision. The agreement is mutual. It would be a mistake, I think, to say the agreement is nonmutual. This is an arbitration agreement that has a carve-out for certain trade secret related claims. If that argument had been raised below, Teleteq would have been able to make the factual presentation that 1670.5 permitted it to make. It was not raised below. And obviously, I cannot come here today, Your Honors, and present evidence that we would have presented in the trial court had the issue been raised. So unless there are any other questions, I'll reserve my remaining two minutes for a vote. I have four minutes. Do you wish to address the claims that this was procedurally unconscionable because it was a condition of employment? I don't, Your Honor, because I believe the case law is pretty clear that merely as imposing an arbitration agreement as a condition of employment is procedurally unconscionable, so we did not brief the issue. I believe that issue is currently being considered by the California Supreme Court in the Gentry case, but the current law is procedural unconscionability is not an issue here because it was a condition of Mr. Martin's employment. But of course, under California law, an agreement must be both procedurally and substantively unconscionable for it to be invalid. And as I've said, the only provision that Mr. Martin challenged here was the fee-sharing provision, and that provision can be easily excised. All the cases in our brief, including the only provision of substantive unconscionability, the challenge was fee-sharing. Correct. Secondly, are you abandoning the issue as to whether the arbitrator should be the first person to determine unconscionability? I'm not, Your Honor. I think it's fully briefed, and I think that that would also be a correct disposition here. The under First Options and Howsam, the two Supreme Court cases, and then we've cited the New York cases interpreting that. There's the Stewart v. Paul Hastings case, Judge Kaplan in the Southern District of New York interpreting First Options and Howsam held that an agreement almost verbatim the same as our agreement here, one that gives the arbitrator, and I'm quoting here from Section 8.2 of the Arbitration Agreement, an arbitration agreement that gives the arbitrator exclusive authority to resolve any dispute regarding the enforceability of the arbitration agreement sends the issue of enforceability to the arbitrator. And the Supreme Court said in those cases that when it's clear and unmistakable that the parties agreed to submit the arbitrability question. Which Supreme Court are you talking about? The U.S. Supreme Court. I'm sorry. And I'm referring there to the First Options case and the more recent Howsam case. So I'm not abandoning the issue at all. I just think that it's set forth in the brief, and that would be a correct disposition as well to reverse and remand for the arbitrator to consider these questions. Are you of the view that the findings that the Court made below are adequate under Rule 52a? I don't believe the Court made any findings. There's a – so the answer is no. The Court made no findings. The order is silent. So there are no findings. Thank you, Your Honor. Well, I've given away some of the questions I have for you. I'm not surprised. May it please the Court, my name is George Hanson. I represent Robert Martin, the plaintiff, and the appellee in this case. I think, as Mr. Schuman made it clear, there is no question that Teletext's arbitration agreement was procedurally unconscionable because it was a contract of adhesion. The next question is, is it substantively unconscionable? I don't think he admitted that, did he? I think he did say that it was a condition of Mr. Martin's employment. But he was also saying that in the California law, the mere fact that it was – if the only fact was it was conditioned on his employment does not make it procedurally unconscionable. It also has to be presented in a way that didn't allow meaningful negotiation. That's right. So mere condition on employment is not procedurally unconscionable under California law. I agree. I read Mr. Schuman's comments as at least focusing now on the issue of substantive unconscionability and then, of course, the issue of severability. Why can't this be severed? It cannot be severed, Your Honor, because there are more than one unconscionable provisions in the agreement. Obviously, I think it's a matter of stipulation that the mandatory fee shift that Mr. Martin would have to pay the arbitrator is unconscionable. He said he'd sever that part. Right. That – the other issue, though, is, as we've heard in the questions, the issue of mutuality. Well, what about the fact that Mr. Schuman says that you never raised that in the district court? Your Honors, we did raise the issue of substantive unconscionability in the lower court, and let me explain how this transpired. His position is that you've raised mutuality or lack of mutuality. He could have shown a business reason for the precise carve-out which has to do with conjunctive relief to restrain the misuse of trade secrets. Right? I understand that that's his argument, that he should have an opportunity to more fully develop the record. Here's my response, and it's really in two parts. First, it's an issue that is a matter of law, and it's a matter of settled law.  What's an issue of law? That when an arbitration agreement on its face, by its terms, reserves the company the right to sue an employee in court for the claims that they are most likely to bring, like trade secret claims, proprietary information claims, but at the same time requires the employee to submit to arbitration the claims it is most likely to bring. Because he's not the employee is not likely to bring trade secret claims. The employer rarely steals the employee's trade secrets. Of course. Right. The employee usually sues for wrongful discharge and discrimination. The employer almost invariably sues for breach of, you know, proprietary information or trade secrets. And are you saying that if that occurs, regardless whether there's a business reason why the employer needs a type of remedy which arbitration cannot give him because he needs injunctive relief, such as a temporary restraining order, from a court, not from the arbitrator, that is substantively unconscionable? And if so, tell me the case. Okay. Here they are. You have the Ninth Circus decision in Ferguson, which had a trade secret carveout that is essentially identical to ours. That is, Ferguson, it involved a countrywide arbitration agreement. Ferguson followed a California appellate court called Mercurio addressing the same countrywide arbitration agreement. And in Mercurio and in Ferguson, the court addressed exactly or almost exactly the language we have here, where the employer reserves the right to sue for trade secrets. I'm going to call it the trade secret carveout. In fact, that's the language that's used by some later appellate courts. The court addressed that and found that it lacked mutuality. Isn't that right? That trade secret carveout by itself makes the contract of arbitration lack mutuality, and that makes it unconscionable. Unconscionable. Substantively. Correct. That's your position based on Ferguson and Mercurio. And I've got more. Abramson and Martinez. All of them address what is being presented to you as a limited trade secret carveout. Is there anything other than mutuality and the fee issue which you claim makes this a substantively unconscionable arbitration agreement? No. Okay. I would like to address, though, the issue of waiver, because I do think it's important and certainly become the centerpiece of Teletext's position on appeal. When Teletext went to Judge Hatter below, they presented to him simply a motion to compel arbitration saying, here's our agreement. It's perfectly fine. Please enforce it. We respond and say, Judge, it is not fine. It is both procedurally and substantively unconscionable. In their original motion, they never move or ask in the alternative or raise in any way the issue of severability. In other words, our response to Judge Hatter met the substance of their argument, but we did not anticipate that they would then come back and say, oh, oh, oh, yes, we agree, it's unconscionable, but now you should sever. On a motion to compel arbitration, there is a response from the party who does not wish arbitration. Is there a rejoinder opportunity and a pleading of some sort that has to be filed by the moving party? Or is the motion to compel arbitration to compel arbitration under the whole agreement? If I understand your question correctly. Where does the waiver come in? The waiver is the known relinquishment of a right. Of a right. Or a relinquishment of a known right. Right. What known right was relinquished by affirmative action of the employer here? Well, actually, I thought you were going to ask me what known waiver of right did I relinquish. I thought you were talking about their waiver, not yours. No. I'm saying when they say that we waived this argument, the issue of severability, the issue of whether you should take out the substantively unconscionable fee shift provision was not raised to the Court. So when we responded in our pleadings, we did not raise those because obviously, you know, they're not going to make a motion to compel arbitration, but, you know, we admit that our fee sharing provision is invalid. They should have. Why? Because Armanderas is absolutely unequivocal on this point. You cannot force. No, but that's a defense for you to raise. And we did show that the agreement was unconscionable. And that was an argument that we raised. Now, on appeal, when they now make, which was raised for the first time in their reply brief, the issue of, oh, Judge, you should have severed, you should have severed the fee shift provision, no oral argument. And candidly, we did not force a disfavored surreply into Judge Hatter's courtroom. We did not do that. So what the judge had in front of him was the issue of severability raised in the first time in their reply. And what the issue of severability does, Your Honors, is it requires now us to go back and look at the whole agreement to see if there are other unconscionable provisions that cannot be cured with a simple severability. Wait a minute. Wait a minute. Are you saying that when you oppose the motion to compel arbitration, you only have to raise, you know, one ground of unconscionability, and you can hold back the others in reserve? Here's what I'm saying. I'm saying that when we oppose the motion to enforce the arbitration, we appropriately raise to the most glaring and the most recently litigated ---- You don't have to raise all your grounds? Is that what you're saying? I am saying that. I don't think we would be required to then assert every single one. When they then come back in the reply and say, okay, we'll give you the fee shift, take it ---- Which they did in the trial court? Well, assuming arguendo, that the arbitrator fee split is unconscionable, Judge, you should go ahead and sever it anyway. And that is where the briefing ended. So it is not a situation where we in our ---- Which is the only issue that you raised as to substantive unconscionability in the trial court, the fee provision. In their reply, they said sever it. It's severable. Correct. In California, the contract is not unconscionable unless it's both procedurally and substantively unconscionable. Right. They said the one ground that you ---- that the employee claims causes unconscionability is the fee provision. Sever it. It's severable. Well, rather than do that, Judge Hatter simply said deny it. He simply did say deny it. Correct. Correct. No conclusions of law. Correct. But just deny it. And I would submit ---- Anything wrong with that? I think it is ---- I mean, how can we review whether his findings were sustained by the record and whether his conclusions of law were adequate based on what he did? If you hold that there are material fact questions that need to be evaluated by the court, I think it probably would be improper simply to say deny it. But the contract, the arbitration agreement on its face is unconscionable because of the two provisions I mentioned, the fee split and the lack of mutuality. And because the court had before it the contract under Ferguson, under the other cases I cited, Martinez, the court was within its authority as a matter of law to say I don't need to hear a business explanation as to why you write in. I get to sue you in court. This is about the second, third time you've said now the lack of mutuality is an issue of law. But that almost does away with 1670.5b, doesn't it? I ---- when I read the Ninth Circuit's opinions in the cases that I mentioned, Adams, Ferguson, Ingle, I believe the courts are construing a lack of mutuality provision which, again, says I get to sue you, you don't get to sue me as facially unconscionable as a matter of law. I read those cases to suggest that the court is not countenancing business reasons. We can all ---- we all know what Teletec will say as to why they were ---- And what does 1670.5b mean? Nothing. Right? It's surplusage. Is that right? The California Code that says ---- Yes. And this is, you know, construed according to California law, right? Well, I honestly think what the courts are doing is recognizing that, as a matter of law, there is no business justification under California law for creating a nonmutual arbitration provision of the type that ---- So answer my question. What does 1670.5b mean? Nothing. It does mean something. It means that in cases where there can be an argument in certain types of nonmutual agreements. Now, not every agreement has to be totally symmetrical. Give me an example. Give me an example of an unconscionable agreement, then, where it would apply. There's an unconscionable ---- I'm sorry. Give you an example of an unconscionable agreement. Yes. Where the other side should be able to present evidence of the commercial setting and so forth as to why it's not unconscionable. Where would that apply, then? I anticipate, off the top of my head, in an arm's-length commercial setting where you have two parties of relatively equal bargaining power where they negotiate a nonmutual arbitration provision which may reserve one bargaining party the right to use the courts for limited purposes, and the other side negotiates and agrees with that. I would imagine that the court would take into account all the attendant facts circumstances, not rendering the California Code on that point surplusage. What is happening, though, in the unique employment context where you have a contract of adhesion, where there is procedural unconscionability, where the parties don't have a meaningful opportunity to bargain, and one side presents a contract on a take-it-or-leave-it provision, I believe the courts are recognizing as a matter of law that that is unconscionable, and I don't believe a record necessarily needed to be established. Is there any case that you can cite as to which says that 170.5b applies only where the court has made a predicate finding of contract of no – makes a predicate finding of the contract is not one of adhesion? Not off the top of my head. You ask me for an example. I try to provide one. I mean, I see your attempt at distinction. I'm just asking if there's any authority for it. I don't know that the Code is only limited. I think it certainly informs the issue as to whether it's a – Let me be even more general. Do you know of any California case law that interprets 1670.5b? Is there any, you know, reported California case that construes what that means and what it implies? You don't know of any case? I wouldn't be able to cite it to you right now. All right. I'm sorry. We've kept you over your time. Okay. Thank you very much. Thank you. Excuse me. I know of a case, Judge Tsushima, Sterling v. Supercuts, which is cited in the basis for Armendariz. And in Armendariz – It's cited in Armendariz? Yes. Sterling v. Supercuts is a First District decision up in San Francisco by Judge Klein interpreting 1670.5b in the employment arbitration context to permit the employer to provide business justifications for an allegedly non-mutual arbitration agreement. That's cited in Armendariz and relied on in Armendariz. And in Armendariz, the California Supreme Court, the final arbiter of California law, says it's not a question of law. It says although an employer may be able in a future case to justify a unilateral arbitration agreement, the employer in the present case has not done so, keeping in mind that in Armendariz it was a truly unilateral arbitration agreement. The employer didn't have to arbitrate anything, and the employee had to arbitrate everything. So – Ferguson, though, does seem to treat it as a question of law, doesn't it? Ferguson doesn't address at all any employer justifications. It's as if none were provided. But what I said, it does appear to treat it as a question of law, doesn't it, Ferguson? Well, if the employer below, if the record did not contain any employer justifications and the employer chose not to provide any, then that's the reason why the opinion reads perhaps the way it does. I'm familiar with the case. I don't think it's – it does not say this is a question of law. And indeed, in the light of Armendariz, this is a California law issue. Ferguson could not say it's a question of law, because the California Supreme Court has made clear that it's not. Well, except didn't Ferguson come after Armendariz? I'm sorry? I didn't hear you, Your Honor. Didn't Ferguson come after Armendariz? It did. It did. But the point is, is that we don't know what the employer said. And the same thing goes for the other cases that Mr. Hansen cited in Martinez and in Abramson. Whatever – and in Abramson, Juniper there did attempt to provide some justifications. But this is a factual question. Teletec was entitled under 1670.5b to present its evidence. The statute permits evidence. And we didn't get the chance to adduce that here. My final point before my time runs out is that there is no reason why the express severance clause in this case – and I don't think for all the reasons we've been discussing, the Court should reach this mutuality question. But if it did, there's no reason why the trade secret carve-out, which has nothing to do with Mr. Martin's claims or nothing to do with this case at all, there's no reason why the express severance clause in this agreement could not be applied to that provision as well. And as I've said, there are many cases, including the Morrison v. Circuit Cities case, and the very recent decision from the First District – I'm sorry, the First Circuit in the Christian case, which was cited in our Rule 28J letter, both of which apply an express severance clause to excise more than one allegedly unconscionable provision. So I don't think the Court should reach the question for all the reasons we've discussed. But if it does, you still have the express severance clause, which I think is the Thank you, Your Honor. Martin v. Talachek is submitted.
judges: Siler , Tashima, Bea